COMMONWEALTH *vs.* BRIAN MCCARTHY.

No. 93-P-275.

Essex. December 15, 1993. - July 29, 1994.

Present: SMITH, PORADA, & GREENBERG, JJ.

*Practice, Criminal*, Verdict, Deliberation of jury, Instructions to jury, Reasonable doubt, Required finding, Disclosure of evidence, Preservation of evidence. *Breaking and Entering. Burglary. Jury and Jurors. Intent.*

A criminal defendant was not entitled to a reversal of his conviction of "breaking and entering a building in the daytime with intent to commit a felony" as charged in the indictment and recorded by the clerk, by reason of the jury's public affirmation of the clerk's inquiry whether the defendant was guilty of "breaking and entering a building in the daytime," which also appeared on the verdict slip attached to the indictment, where, in the circumstances of the case and in light of the judge's correct instructions to the jury on the elements of the offense and the necessary intent, there was no possibility that the recording of a verdict of guilty of the offense charged was a mistake. [116-118]

A criminal defendant did not demonstrate any irregularity in the substitution at his trial of a juror for a deliberating juror who became ill that might give rise to prejudice such as would entitle him to a reversal of his conviction under G. L. c. 234A, § 74 [118], and the jury's having returned a verdict on one of three indictments before the substitution was made did not provide any basis for the defendant to object, where the judge properly instructed the jury to disregard all previous deliberations on the remaining indictments and to begin their consideration anew [119].

At a criminal trial, the judge's instructions to the jury on reasonable doubt were adequate and did not create a substantial risk of a miscarriage of justice. [119]

Evidence at a criminal trial was sufficient for the jury to infer beyond a reasonable doubt that the defendant broke into and entered a building in the daytime with the specific intent to steal. [119]

At the trial of indictments for breaking and entering, attempted breaking and entering, and possession of burglarious tools, in which the defendant was acquitted of the latter two charges, the defendant was not entitled to a new trial on the ground that the police had discarded the burglarious implements and had not notified his counsel until the beginning of the trial, where the defendant did not demonstrate any possible prejudice from the loss. [119-120]

INDICTMENT found and returned in the Superior Court Department on November 6, 1990.

The case was tried before *John T. Ronan*, J.

*Kerry David Strayer* for the defendant.

*Elin H. Graydon*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. After a Superior Court jury stated that it had reached verdicts, the session clerk read to the jurors the indictments charging the defendant with possession of burglarious instruments (G. L. c. 266, § 49) and attempted breaking and entering a building in the daytime with intent to commit a felony (G. L. c. 274, § 6). To both charges, when the clerk inquired how the jury found, the forewoman responded, "Not Guilty." But when the session clerk asked for the verdict on a final indictment, which alleged breaking and entering a building in the daytime with intent to commit a felony (G. L. c. 266, § 18), he asked, "[W]hat say you now on [the indictment] charging [the defendant] with breaking and entering a building in the daytime [omitting the words *with intent to commit a felony*]: Is the defendant guilty or not guilty?" The foreperson of the jury replied, "Guilty." The jurors then affirmed the verdict and were discharged.[1]

On appeal from that conviction, the defendant claims a variety of errors. We first consider his claim that the mistake by the clerk in reading the indictment and recording the verdict rendered his conviction null and void.[2]

The evidence would have permitted the jury to find the following. When the police were called by a neighbor to a two-family house in Methuen, they checked the exterior of the building. All the doors were secure, but the frame of the rear

---

[1]The mistake was repeated soon afterwards when the clerk announced the sentence imposed by the judge on the charge of "breaking and entering a building in the daytime."

[2]Defense counsel's failure to object at any point during the taking of the verdict does not prevent us from considering the question, because "the steps taken to insure accurate receipt and recordation of a jury's verdict are at the core of whether there has been a fair trial." *Commonwealth* v. *Clements*, 36 Mass. App. Ct. 205, 207 n.1 (1994).

basement window was pushed in, its glass was broken, and a piece of wood, which had been ripped off, was lying on the ground in front of the window. Two officers made their way into the basement through the broken window because all the exterior doors were locked. No one was in the basement, but the door at the head of the stairs was ajar, so one officer proceeded to the first-floor landing. He found that the door to the first-floor apartment was locked.

Meanwhile, from his position in front of the house, a third officer saw a man, later identified as the defendant, appear on the second-floor porch. The defendant asked what brought the officer to the scene. Then, in response to the officer's inquiry, he stated that he lived there, and quickly withdrew into the rear hall on the second floor of the building.

At that point, one of the officers on the first floor heard footsteps directly above him. He went to the head of the stairway, where he encountered the defendant. When questioned, the defendant stated that he was visiting friends who lived there and that he had used keys to gain entry. This was untrue: none of the keys found on his person fit the locks to any of the doors.

After the defendant was arrested, the officers discovered that one of the hinge pins from the door to the first-floor apartment had been removed and the other had been raised. They seized a wrench that was on the floor in front of the door.

In his instructions to the jury on the indictment which charged the defendant with the crime of breaking and entering in the daytime with intent to commit a felony (G. L. c. 266, § 18), the judge correctly defined each element of the offense and clearly informed them that they had to find beyond a reasonable doubt that the breaking of the building must be with "the specific intent to commit a felony." Separate verdict slips were prepared, presumably by the session clerk; the slip in regard to that charge contained a handwritten shorthand caption which read: "B&E Bldg. D.T." The intent element, however, did appear on the face of the indictment, which was attached to the verdict slip and sent to the

jury. After deliberations the foreperson checked on the verdict slip for that charge the box indicating guilt.

The defendant complains that the pronouncement and recording of the verdict were deficient because the session clerk's question failed to include the words "with intent to commit a felony." This case is a variation on a theme recently developed in *Commonwealth* v. *Andino,* 34 Mass. App. Ct. 423 (1993). See also *Commonwealth* v. *Harris,* 23 Mass. App. Ct. 687 (1987).

In the *Harris* case the defendant was tried on an indictment charging armed assault with intent to murder. During the trial, the session clerk, prosecutor, and judge on various occasions correctly stated the crime alleged in the indictment but at other times mistakenly stated that the charge was the lesser included offense of "assault with intent to murder." The jury were instructed on armed assault with intent to murder, but not the lesser included offense of assault with intent to murder. The jury returned with a verdict slip marked "Guilty" which bore on its reverse the mistaken legend "assault with intent to murder." The clerk read the jury slip and asked the foreman for the jury's verdict on the indictment charging "assault with intent to murder." The foreman responded, "Guilty." *Id.* at 688-689. Judgment was then entered against the defendant and he was given a sentence that exceeded the maximum permissible sentence for assault with intent to murder. *Id.* at 690-691. On appeal we held that the verdict could stand only as to the lesser included offense of simple assault with intent to murder. We reasoned that the jurors cannot be asked to explain why they returned that particular verdict. *Id.* at 692-693. We pointed out also that there might have been no mistake since, on the evidence presented, it was open to the jury to find the defendant guilty of the lesser included offense. *Id.* at 693 n.9.

Our decision was in accord with a venerated principle, supported by a long line of cases, that "[t]he only verdict which can be received and regarded, as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open and public verdict, given in and assented to, in open court, as

the unanimous act of the jury, and affirmed and entered of record, in the presence and under the sanction of the court." *Lawrence* v. *Stearns*, 11 Pick. 501, 502 (1831). *Commonwealth* v. *Powers*, 21 Mass. App. Ct. 570, 574 (1986), and cases cited.

This general rule has been applied strictly, but not without limit. In *Commonwealth* v. *Andino*, 34 Mass. App. Ct. at 424, the defendants were charged with, and evidence was introduced to support the charge of, receiving a stolen motor vehicle. The verdict slip read: "receiving stolen property," a separate and distinct offense. When the verdict was read in open court the jurors responded affirmatively that the defendant was guilty of "receiving stolen property." *Id.* at 424-425. In that case, we permitted an exception to the line of cases outlining the general rule because the evidence, the arguments, and the instructions at trial regarding the stolen motor vehicle matched the charges.[3] Other unusual factors were present in the case. The jurors could not have been mistaken about the charge because all of the "evidence, arguments, and instructions at trial related to a particular stolen motor vehicle . . . ." *Id.* at 427. We also noted that the judge's instruction on using an automobile without authority as a lesser included offense focused the jury's attention exclusively on the motor vehicle, diminishing the possibility of mistake. *Ibid.*

The instant case does not differ from that presented in the *Andino* case. Here, the judge correctly instructed the jury with respect to all of the elements of the offense. He read to the jury the statutory language highlighting the intent element. Moreover, the split verdict — "not guilty" on the

---

[3]See *Commonwealth* v. *Brown*, 367 Mass. 24, 27-29 (1975), where not guilty verdicts were affirmed in open court and recorded, and the jurors were discharged but returned a few minutes later to inform the judge that those verdicts did not reflect their agreed determination. It was proper for the judge to correct the verdicts despite the announcement of discharge of the jurors because they remained an undispersed unit within the control of the court. See also *Commonwealth* v. *Judd*, 2 Mass. 329, 334 (1807), where a jury verdict announced in open court was later amended to add technical words.

charge of attempting to break and enter the first-floor apartment and "guilty" on the charge at issue — indicates that the jurors were not confused and that no mistake, in fact, occurred. Nor was there any evidence introduced at trial that would permit a verdict of guilty on any lesser included offense. Similarly, here, the clerk, reading the shorthand caption of the verdict slip, referred to an abbreviated version of the offense that was properly charged in the indictment and announced in open court at the outset of the proceedings.

The case of *Commonwealth* v. *Vinnicombe*, 28 Mass. App. Ct. 934, 935 (1990), upon which the defendant relies, is distinguishable. There the judge actually charged the jury on the nonexistent crime of "breaking and entering a building in the daytime" and omitted the felonious intention element of the crime from his instructions. The defendant conceded an unpermitted entry into the building but presented a defense that he intended only to "talk" to an occupant.

We briefly mention other issues raised by the defendant. On the second day of deliberations an alternate juror was substituted when one of the original deliberating jurors failed to appear due to an illness. The defendant was not entitled to a hearing before the alternate juror was substituted because his trial was conducted in a county designated as a "participating county" under G. L. c. 234A, which abrogated the hearing requirement of G. L. c. 234, § 26B. See G. L. c. 234A, §§ 1, 39, 74; *Commonwealth* v. *Taylor*, 33 Mass. App. Ct. 655, 656-658 (1992). Compare *Commonwealth* v. *Haywood*, 377 Mass. 755, 768-770 (1979) (pursuant to G. L. c. 234, § 26B, substitution of a juror can be made only after "good cause" is established at a hearing). Moreover, under G. L. c. 234A, § 74, as inserted by St. 1982, c. 298, § 1, a defendant is entitled to a reversal of his conviction for an irregularity in the substitution of an alternate juror only where he can establish that he "has been specially injured or prejudiced thereby"; here, there was no irregularity and no prejudice. *Commonwealth* v. *Taylor*, 33 Mass. App. Ct. at 657-658.

There is no basis for the defendant's claim that the judge was prohibited from substituting a juror on the second day of deliberations because the jury had already returned a verdict on one of the charges. See *Commonwealth* v. *Kalinowski*, 12 Mass. App. Ct. 827, 829-830 (1981). Cf. *Commonwealth* v. *Foster*, 411 Mass. 762, 763-766 (1992). The judge properly instructed the jury to disregard all prior deliberations and begin its consideration of the evidence again as to the remaining two charges. *Commonwealth* v. *Haywood*, 377 Mass. at 770.

The defendant's trial counsel made no objection to the instructions given by the judge defining reasonable doubt. "[T]o determine whether a definition of reasonable doubt accurately conveys the meaning of the term, it is necessary to consider the charge as a whole." *Commonwealth* v. *Wood*, 380 Mass. 545, 548 (1980), quoting from *Commonwealth* v. *Watkins*, 377 Mass. 385, 388, cert. denied, 442 U.S. 932 (1979). The jury were advised by the judge that each element of the offense, including the defendant's intent, required proof beyond a reasonable doubt. "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof" so long as, "taken as a whole, the instructions . . . correctly conve[y] the concept of reasonable doubt to the jury." *Victor* v. *Nebraska*, 114 S. Ct. 1239, 1243 (1994), quoting from *Holland* v. *United States*, 348 U.S. 121, 140 (1954). The judge's instructions on specific intent were also adequate and did not create a substantial risk of a miscarriage of justice.

The denial of the motion for a required finding of not guilty was not erroneous, as there was sufficient evidence to permit a rational factfinder to infer beyond a reasonable doubt, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), that the defendant broke into and entered the building with the specific intent to steal.

The defendant argues that because the Commonwealth did not disclose until the beginning of that trial that certain physical evidence — the burglary tools — had been discarded, the conviction of breaking and entering with intent to

commit a felony should be reversed and a new trial ordered.[4] Defense counsel moved to dismiss the indictment for possession of burglary tools but did not request a continuance. The motion was denied, but the defendant was subsequently acquitted of that charge. "[W]hen potentially exculpatory evidence is lost or destroyed, a balancing test is employed to determine the appropriateness and extent of remedial action. The courts must weigh the culpability of the Commonwealth, the materiality of the evidence and the potential prejudice to the defendant." *Commonwealth* v. *Olszewski*, 401 Mass. 749, 755 (1988), quoting from *Commonwealth* v. *Willie*, 400 Mass. 427, 432 (1987). Here, there were no fingerprints on the tools, and the defendant has not shown any possible prejudice to him as a result of the loss of the tools. See *Commonwealth* v. *Greenberg*, 34 Mass. App. Ct. 197, 203-204 (1993) (no due process rights of the defendant violated where police destroyed a jacket after testing revealed no inculpatory evidence and where there was no possible prejudice to the defendant resulting from the missing jacket).

*Judgment affirmed.*

---

[4]The defendant also argues that the Commonwealth did not disclose until trial that laboratory testing had revealed no fingerprints on the tools. However, a memorandum in support of a motion to dismiss filed by defense counsel several months before trial mentions the absence of fingerprints on the tools.

We need not consider the defendant's argument that the judge should have dismissed the indictment for possession of burglarious tools, as the defendant was found not guilty of that offense; the argument that denial of the motion showed bias on the part of the judge is without merit.

There is also no merit to the defendant's argument that the prosecutor's mention of the tools in opening and closing argument was improper, as there was testimony at trial that such tools were found at the scene.