COMMONWEALTH *vs.* CARMELO RODRIQUEZ CARBALLO.

Middlesex. November 20, 1979. — January 16, 1980.

Present: BROWN, GREANEY, & DREBEN, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, New trial, Capital case. *Witness,* Self-incrimination.

Where the defendant in a criminal case did not object to the judge's charge to the jury, he was not entitled to challenge the charge on appeal. [57-58]

There was no error in the denial of a motion for a new trial based upon a recantation by a material witness who refused to testify after the judge informed him of the penalty for perjury in a capital case and appointed counsel to represent him. [58-60]

The law and the evidence in the case of a defendant indicted for murder in the second degree would not warrant relief under G. L. c. 278, § 33E, if the plenary power conferred on the Supreme Judicial Court for the review of capital cases were vested in this court. [61]

INDICTMENT found and returned in the Superior Court on August 15, 1974.

The case was tried before *Hallisey,* J., and a motion for a new trial was heard by him.

*William J. Buckley* for the defendant.

*Susan A. Ghetti,* Legal Assistant to the District Attorney, for the Commonwealth.

DREBEN, J. The defendant was indicted for murder in the first degree in connection with the shooting death of Bienvenido Oquendo and was found guilty of murder in the second degree. He assigns a number of errors in this appeal.

1. He asserts that the trial judge's instructions were confusing and contradictory, particularly with reference to the issues of reasonable doubt and malice. Since the defendant did not object to the judge's charge and, indeed, his counsel stated that he was "content" with it, this assignment of error

"brings nothing for review to an appellate court." *Commonwealth* v. *McDuffee,* 379 Mass. 353, 357 (1979). *Commonwealth* v. *Peters,* 372 Mass. 319, 324 (1977). See *Commonwealth* v. *Franks,* 365 Mass. 74, 76 (1974). "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee, supra* at 357.

In any event, the defendant's contentions relating to malice are the same as those rejected in *Commonwealth* v. *Lacy,* 371 Mass. 363, 371-373 (1976), and also in *Commonwealth* v. *Leate,* 352 Mass. 452, 456-457 (1967), and the charge comported with the definitions of malice set forth in *Commonwealth* v. *McGuirk,* 376 Mass. 338, 345 (1978). The defendant's contentions concerning the instructions regarding reasonable doubt are almost identical to the objections raised and rejected in *Commonwealth* v. *Williams,* 378 Mass. 217, 232-235 (1979).

2. The defendant next asserts that the trial judge abused his discretion in denying the defendant's motion for a new trial based on the recantation of a Commonwealth witness, one Rafael Cabrera. A motion for a new trial based on recantation by a material witness is addressed to the sound discretion of the trial judge, and his "duty . . . is to give grave consideration to the credibility of the witness's new testimony." *Commonwealth* v. *Robertson,* 357 Mass. 559, 562 (1970). *Commonwealth* v. *Cassesso,* 360 Mass. 570, 575 (1971), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972). *Commonwealth* v. *Leate,* 361 Mass. 347, 349 (1972). *Commonwealth* v. *Watson,* 377 Mass. 814, 838-839 (1979).

The judge held two hearings on the defendant's motion for a new trial, and his careful memorandum stating his findings of fact and conclusions of law shows that he gave "grave consideration" to the new testimony. His findings, which are warranted by the evidence, indicate the following: The victim was shot with a shotgun, from across the

street. At the trial, the defendant testified that the victim had a gun and that he fired his shotgun in self-defense. Three additional defense witnesses also testified that they had seen the victim with a gun. Two witnesses for the Commonwealth, including Cabrera, testified that they had not seen the victim with a gun, and the transcript of the testimony of a third witness corroborated this testimony.[1] There was no evidence of any gun in the area other than the one used by the defendant.

Subsequent to the trial, Cabrera signed an affidavit stating that he did not tell the truth at the trial, that the victim did, in fact, have a pistol, and that the defendant had to shoot in self-defense. Three other affidavits were presented to the judge, each of which stated that the affiant was present when Cabrera admitted that he had lied at the trial. The judge at the first hearing on the defendant's motion for a new trial, in June, 1976, sua sponte informed Cabrera of the penalty for perjury in a capital case, and suggested that he might wish to have the advice of counsel. This cautionary procedure was not only within the judge's discretion but was a "commendable practice." *Commonwealth* v. *Slaney*, 345 Mass. 135, 141-142 (1962). *Taylor* v. *Commonwealth*, 369 Mass. 183, 192 (1975).

Cabrera responded that he wanted counsel, and counsel was appointed. Thereafter, Cabrera disappeared, and the judge commissioned counsel to seek out Cabrera and determine whether he had decided to testify. At a second hearing on the defendant's motion for a new trial, held on September 16, 1977, counsel testified that he had found Cabrera and had advised him not to come back and testify. He also translated a statement signed by Cabrera in which the latter stated that, on the advice of his attorney, he had nothing further to say regarding the defendant's case.

---

[1] The judge found that the Commonwealth had made a diligent search and had been unable to find this witness who had testified at the probable cause hearing and had been cross-examined by the defendant's counsel. In his appeal, the defendant has not argued against the admission of the transcript. See *Commonwealth* v. *DiPietro*, 373 Mass. 369, 375-380 (1977).

The judge, based in part on his observation of Cabrera both at trial and at the first hearing on the defendant's motion for a new trial, found that the recantation affidavit was not credible. He found that it was extracted under conditions of psychological coercion and, in view of Cabrera's ignorance of the possible penalty for perjury in a capital case, was not voluntarily and intelligently given. "[B]y reason of presiding over the trial, the judge was in the best possible position to weigh the credibility of the proffered evidence . . . ." *Commonwealth* v. *Brown*, 378 Mass. 165, 172 (1979). *Commonwealth* v. *Robertson*, 357 Mass. at 562. He was not compelled to accept the affidavits as true. *Commonwealth* v. *Gwizdoski*, 284 Mass. 578, 581 (1933). *Commonwealth* v. *Cassesso*, 360 Mass. at 575. *Commonwealth* v. *Leate*, 361 Mass. 349-350.

The judge also found that Cabrera would not testify in accordance with his affidavits and that he would have a right to, and would, invoke the Fifth Amendment to the United States Constitution, thus making it impossible for the Commonwealth to cross-examine him.[2] Moreover, he found, that "even if a new trial were granted, and Cabrera were to testify in accordance with his affidavit, it would probably not affect the result in this case." See *Commonwealth* v. *Leate*, 361 Mass. at 350; *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 542-543 (1971); *Commonwealth* v. *Cassesso*, 360 Mass. at 575-576; *Commonwealth* v. *Robertson*, 357 Mass. at 562.

"[T]he decision of the judge is not to be reversed unless a survey of the whole case shows that his decision, unless reversed, will result in manifest injustice." *Commonwealth* v. *Robertson*, 357 Mass. at 562, quoting from *Sharpe, petitioner*, 322 Mass. 441, 444-445 (1948). *Commonwealth* v. *Watson*, *supra* at 839. *Commonwealth* v. *Brown*, *supra* at 171. The defendant has made no such showing.

---

[2] If Cabrera were willing to testify in accordance with his affidavit, there would be problems in allowing such direct testimony where cross-examination is precluded by the privilege against self-incrimination. See *Commonwealth* v. *Funches*, 379 Mass. 283, 291-292 (1979).

3. The defendant also asks us to review his case under G. L. c. 278, § 33E, as amended through St. 1974, c. 457. That statute permits review by the Supreme Judicial Court of convictions in which a defendant was tried on an indictment for murder in the first degree and was convicted of murder either in the first or second degree.[3] However, if § 33E powers were vested in this court, as the defendant urges, we would not exercise them since this is not a case where an examination of the law and evidence would lead us to the conclusion that "justice" requires the court to "direct the entry of a verdict of a lesser degree of guilt." *Commonwealth* v. *Cadwell*, 374 Mass. 308, 315-316 (1978).

*Order denying motion for*
*new trial affirmed.*

*Judgment affirmed.*

---

[3] Statute 1979, c. 346, § 2, effective July 1, 1979, now limits § 33E review to convictions of murder in the first degree. Such convictions are not subject to the concurrent jurisdiction of this court. G. L. c. 211A, § 10, inserted by St. 1972, c. 740, § 1. There is a question whether c. 346, § 2, applies to cases·such as this one, where the conviction occurred prior to July 1, 1979, but where the appeal was docketed after July 1, 1979. We note that in a case pending in the Supreme Judicial Court, Commonwealth vs. Delmont F. Davis, SJC-1852, the Commonwealth argued in its brief that § 33E review is no longer available where the appeal of a conviction of second degree murder was docketed in the Supreme Judicial Court after July 1, 1979.